

# THE ATTORNEY GENERAL
## OF TEXAS

November 17, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Mike Toomey                    Opinion No. JM-821
Chairman
Judiciary Committee                      Re: Whether a volunteer
Texas House of Representatives           fire department is subject
P. O. Box 2910                           to the Open Records Act,
Austin, Texas    78769                   article 6252-17a, V.T.C.S.
                                         (RQ-1225)

Dear Representative Toomey:

You ask whether a volunteer fire department that receives public funds through a contract with a rural fire prevention district constitutes a "governmental body" under the Texas Open Records Act, article 6252-17a, V.T.C.S. Your concern focuses on the Cy-Fair Volunteer Fire Department, which you state is organized as a nonprofit corporation under Texas law. You indicate that the department receives public funds through a contract with the Harris County Rural Fire Prevention District No. 9 to perform fire fighting services in the district. At various times, members of the public have requested records from the district.

The Open Records Act applies to governmental bodies as defined in section 2 of the act. Section 2(1)(A) describes the state agencies covered by the act. Sections 2(1)(B)-(E) list specific types of local governing bodies or their subdivisions that are covered by the act. A volunteer fire department does not fall within any of these specific descriptions. Section 2(1)(F) provides that a "governmental body" also includes

> the part, section, or portion of every organization, corporation, commission, committee, institution, or agency <u>which is supported in whole or in part by public funds, or which expends public funds</u>. Public funds as used herein shall mean funds of the State of Texas or any governmental subdivision thereof. (Emphasis added.)

Private nonprofit corporations can fall within this provision. See, e.g., Open Records Decision Nos. 302 (1982); 228 (1979).

The primary issue in determining whether certain private entities are "governmental bodies" under the act is whether they are supported in whole or in part by public funds or whether they expend public funds. See A.H. Belo Corporation v. Southern Methodist University, 734 S.W.2d 720, 723 (Tex. App. - Dallas 1987, writ pending); Attorney General Opinions JM-154 (1984); JM-116 (1983); Open Records Decision Nos. 343, 302 (1982); 228 (1979); see also Kneeland v. National Collegiate Athletic Association, 650 F. Supp. 1047, 1056 (W.D. Tex. 1986); cf. Attorney General Opinions JM-596 (1986); JM-120 (1983). In A. H. Belo Corporation v. Southern Methodist University, supra, the court held that certain private schools' athletic departments are not "governmental bodies" under the Open Records Act because they did not receive public funds. The member schools, state and private, retained a predetermined amount of funds from gate receipts and from broadcasting fees. The remaining funds were forwarded to the Southwest Athletic Conference (SWC) and other schools. The SWC retained a predetermined amount and distributed the rest to member schools. The court reasoned that the departments did not receive "public funds" within the meaning of section 2(1)(F) because the money distributed by the SWC did not constitute the "funds of the State of Texas or any governmental subdivision thereof." The court concluded that, because the funds never "vested" in any school, including a public school, the funds did not constitute "public funds." See 734 S.W.2d at 723.

The contract between the Cy-Fair Volunteer Fire Department and the Harris County Fire Prevention District No. 9, however, expressly involves a transfer to the department of the bulk of funds received by the district from its tax collections, less the district's administrative costs. In the A.H. Belo case, the court distinguished Open Records Decision No. 228 on the basis that it clearly involved public funds; funds transferred directly from a governmental body to the private entity in question. The case at hand is similar. Thus, this case is not one in which the governmental body acts only as a conduit for funds.

The receipt of public funds for the general support of the activities of a private organization brings that

organization within the definition of a "governmental body." Open Records Decision No. 228. For example, in Open Records Decision No. 228, this office determined that a private, nonprofit corporation chartered to promote the interests of the Dallas-Fort Worth metropolitan area was a governmental body under the Open Records Act because of its contract with the city of Fort Worth. The contract did not impose "a specific and definite obligation on the commission to provide a measurable amount of service in exchange for a certain amount of money as would be expected in a typical arms-length contract for services between a vendor and purchaser." Open Records Decision No. 228. The corporation was not simply a vendor or independent contractor who provided goods or services to a governmental body in an arms-length transaction. For these reasons, the decision determined that the contract funds were for the general support of the corporation rather than for specific measurable services. Consequently, the corporation was supported in part by public funds within the meaning of section 2(1)(F) of the Open Records Act. Id.; see also Attorney General Opinion JM-116 (1983); Open Records Decision No. 302 (1982).

In contrast, Open Records Decision No. 343 (1982) determined that a private, nonprofit corporation under contract with a hospital district to provide emergency medical service is not a "governmental body" because the applicable contract provided that the corporation should receive "each month a sum equal to the differences between cash receipts and approved operating expenditures of the ambulance service." The decision stated that this language imposed a definite obligation to make a "specific payment for specific measurable services" rather than to provide for general support. The decision did not indicate how the payment of monthly operating expenses through this formula constitutes payment for "specific measurable services" or how that payment can be distinguished from general monthly support. The "test" applied in Decision 343 is part of the test adopted and applied in Open Records Decision No. 228. The "test" was formulated in Decision No. 228, however, to help distinguish the "private" nonprofit corporation from a private vendor who sells goods or services to a governmental body. The "test" cannot be applied mechanically. The precise manner of funding is not the sole dispositive issue in determining whether an entity falls under the Open Records Act.

Other aspects of a contract or relationship involving the transfer of public funds between a private and public entity must be considered in determining whether a private entity is a "governmental body" under the Open Records Act. For example, a contract or relationship that involves public funds and that indicates a common purpose or objective or that creates an agency-type relationship[1] between a private entity and a public entity will bring the private entity within the section 2(1)(F) definition of a "governmental body." See Open Records Decision Nos. 302, 228; see also Kneeland v. National Collegiate Athletic Association, supra (following Open Records Decision No. 228). For example, Open Records Decision No. 228 cited a provision of the contract which directed the private entity to continue to carry out the common objectives it held with the city. Structuring a contract that involves public funds to provide a formula to compute a fixed amount of money for a fixed period of time will not automatically prevent a private entity from constituting a "governmental body" under section 2(1)(F) of the Open Records Act. The overall nature of the relationship created by the contract is relevant in determining whether the private entity is so closely associated with the governmental body that the private entity falls within the Open Records Act. As indicated, the precise manner of funding is not the sole dispositive issue in determining whether an entity falls under the Open Records Act. For this reason, the determination in Open Records Decision No. 343 with regard to a "governmental body" under the act should not be relied upon.[2]

---

1. It should be noted that the common purpose or agency-type relationship that will subject a "private" entity to the Open Records Act is not the equivalent of an agency relationship for purposes of tort liability. See generally Attorney General Opinion JM-748 (1987).

2. Review of the contract at issue in Open Records Decision No. 343 reveals that the contract did not involve "a specific and definite obligation on the [entity] to provide a measurable amount of service in exchange for a certain amount of money as would be expected in a typical arms-length contract for services between a vendor and purchaser." See Open Records Decision No. 228 (1979).
(Footnote Continued)

Additionally, when volunteer fire departments contract with a political subdivision, considerations apply to them that ordinarily set them apart from private vendors of goods and services who typically deal with governmental bodies in arms-length transactions. Fire protection is one of the services traditionally provided by governmental bodies. See City of Coleman v. Rhone, 222 S.W.2d 646 (Tex. Civ. App. - Eastland 1949, writ ref'd). Although no statute expressly makes nonprofit volunteer fire departments subject to the Open Records Act or labels them governmental bodies for other purposes, several statutes recognize that they may have strong affiliations with public agencies. See, e.g., V.T.C.S. art. 8309h, §1(2) (political subdivisions may bring volunteer firefighters within workers compensation coverage); art. 6243e.3 (political subdivision may opt to provide relief and retirement benefits to volunteer firefighters); see also Tex. Const. art. III, §51-d (legislature may provide benefits for survivors of members of volunteer fire departments killed in the performance of "official duties"). These considerations make it more likely that a nonprofit volunteer fire department that enters into a contract with a public entity will fall within the Open Records Act. Whether or not a particular nonprofit volunteer fire department falls within the Open Records Act depends on the circumstances in each case, including the terms of the contract between the department and the public entity. See Schwartzman v. Merritt Island Volunteer Fire Department, 352 So. 2d 1230 (Fla. App. - 4th Dist. 1977), cert. denied, 358 So.2d 132 (Fla. 1978) (cited in Open Records Decision No. 228 (1979)).

The contract between the Cy-Fair Volunteer Fire Department and the Harris County Rural Fire Prevention District No. 9 involves the general support of the activities of the department with public funds. The contract provides:

> The Department will provide the emergency ambulance services, the fire prevention

---

(Footnote Continued)
For example, the hospital district provided ambulances for the ambulance service and provided for the general monthly operating expenses of the service. The service could not make expenditures, including hiring personnel, without district approval.

> services, the fire fighting services in the geographic District and <u>will not look to the District to provide any services whatsoever except for the providing of funds to enable the Department to carry on its duties and responsibilities</u>. (Emphasis added.)

Thus, the department receives public funds to provide all of the district's needed services. Additionally, the contract involves the submission by the department to the district of one-year operating budgets and a three-year capital expenditure budget for planning purposes. The contract also provides for a form of continuing annual renewals. Consequently, the contract provides for the general support of the department for purposes of section 2(1)(F) of the Open Records Act.

As indicated, section 2(1)(F) covers only "the part, section, or portion" of corporations supported by public funds. See Open Records Decision No. 228. Accordingly, the department must comply with the Open Records Act to the extent that it receives public funds from the district. Because the contract requires the department to maintain a separate accounting of the expenditure of funds received from the district, this "partial" coverage should not require undue delay in responding to requests for information under the Open Records Act.

### S U M M A R Y

> The Cy-Fair Volunteer Fire Department, a nonprofit corporation, is a "governmental body" within the meaning of section 2(1)(F) of the Texas Open Records Act, article 6252-17a, V.T.C.S., to the extent that it is supported by public funds received pursuant to its contract with the Harris County Rural Fire Prevention District No. 9.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General